## Symphony Player Company v. Hackstadt.

(Decided December 17, 1918.)

### Appeal from Kenton Circuit Court.

1. Contracts—Time of Performance—Abandonment.—Where one under a contract undertakes to do specific work upon a chattel, in the absence of an agreed time within which the work shall be done, must perform it within a reasonable time, and if he should fail, the owner may treat the contract as abandoned and proceed for whatever relief to which in law he may be entitled.

2. Bailment—Suit for Conversion.—If a bailee neglects to perform his work for an unreasonable length of time and so mutilates the chattel as to destroy it and render it worthless, the bailor may sue the bailee as for a conversion of the chattel and recover its value, in which case it is no defense for the bailee to comply with the contract after the bailor has treated it as abandoned and placed his claim in the hands of an attorney.

O. M. ROGERS and R. G. WILLIAMS for appellant.

R. C. SIMMONS and S. D. ROUSE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On or about March 1, 1911, the plaintiff and appellee here, G. H. Hackstadt, was the owner of a pin-cylinder organ used in connection with a merry-go-round, or flying Dutchman, in the operation of which plaintiff was engaged at that time. He entered into a contract with the predecessors in business of the appellant and defendant below, the Symphony Player Company, to convert the organ into a player-organ to play perforated 65-note music, the work to be completed, according to plaintiff's testimony (which is undisputed) by April 15, 1911; it was further agreed that certain work should be done to the bellows of the organ, and that it should be painted, for all of which plaintiff was to pay $135.00.

Shortly after the contract the partnership with whom it was made became incorporated in the name of the Piano Player Manufacturing Company, which assumed all the obligations of the partnership, and the name of that company was afterwards changed to that of appellant, the Symphony Player Company. The place of business of the defendant at the date of the contract was in Cincinnati, Ohio, but a short while after the execution of the contract it moved its place of business to another part of the city, from which latter place it later removed its business to the city of Covington, Kentucky. Nothing appears to have been done under the contract for almost a year, except to tear the organ to pieces and perhaps saw off some of the pipes, but in the meantime plaintiff was making frequent demands that the contract be carried out and the work completed.

Eventually plaintiff was notified that his organ had been remodeled so as to play 44-note paper music instead of that called for by the contract; but even this much was not done for more than two years after the contract was entered into. When plaintiff learned what had been done to the organ in an alleged effort to carry out the contract, he at once repudiated it and declined to accept the organ thus remodeled because it failed to produce the volume of music which he desired for his business, and further because it was an entire failure even as a player of 44-note music, in that the sound was low and there was a great discord and a lack of harmony in its notes. About that time, or shortly afterward, defendant began preparations to move its business from

the city of Cincinnati, Ohio, to the city of Covington, Kentucky, and under the contention that it had complied with its contract it wrote a letter to plaintiff to the effect that his organ had been completed according to contract and offering to deliver it to him upon demand. That letter was written on July 16, 1912, and on the 31st of the same month it again wrote him stating its intention to move, and that unless he called for the organ it would be compelled to leave it in the building defendant then occupied, subject to his orders. On August 5th following, the defendant wrote him, saying: "We received your favor of the 31st inst. We have the organ now in as good a condition as can be made. We are moving our factory and would therefore like to get it out of the road." The letters of plaintiff in response to those of defendant are not filed, but he testified that he was protesting in them all the while that the organ had not been completed according to the contract. When the move was made from Cincinnati to Covington the organ was taken along and stored in the basement of the building which defendant occupied in the latter city, where it remained for more than a year without anything whatever being done to it, and when plaintiff went there to see about the organ, in response to a letter written him by the defendant on May 17, 1913, the manager for defendant could not at first find the organ, but eventually located it in the basement, as above stated.

On June 10, 1913, another letter was written by plaintiff to defendant saying: "Replying to your letter of June 3rd will state that we have found that it is going to be utterly impossible for us to repair the organ. We wish you would kindly call upon us as early as possible without any inconvenience to yourself, and we will endeavor to get together and straighten this matter out. Regretting our inability to make the repairs as you require them, we remain," &c. Plaintiff replied to that letter on June 13, and next day defendant wrote him, saying: "Replying to your letter of June 13th, in reference to the organ, will state that we are compelled to advise you, much to our regret, that your organ can not be finished at any time." The letter then continues by stating that some of the pipes were gone and that defendant did not know whether they had ever been received or whether they had been lost.

Notwithstanding all these rebuffs the plaintiff continued to make heroic efforts to have his organ completed according to contract. But failing, he finally, some time in June, 1915, placed the matter in the hands of his attorney, which resulted in the filing of this suit to recover the value of the organ, upon the ground that defendant had so mutilated and abused it as to render it worthless. In the meantime defendant's representatives suggested to plaintiff that he buy a new organ, since it appeared impossible for defendant to make the repairs according to contract. Plaintiff did buy a new one, but not with the intention of abandoning his contract with defendant, since he continued thereafter to insist upon its performance until it became evident that defendant had not only abandoned its contract, but had also rendered the organ worthless, as stated. The petition fixed the value of the organ at $700.00, and sought judgment for that amount.

The answer was a denial, with the affirmative allegation that there was no agreement to repair the organ for the price indicated but only one to *undertake* such repairs, with no guarantee that the work could be done. A denial of that plea constituted the issues, and at the close of the evidence the court peremptorily instructed the jury to find for plaintiff what it might reasonably believe from the evidence was the value of the organ at the time it was delivered to defendant under the contract. This was followed by a verdict in favor of plaintiff for $700.00, upon which judgment was rendered, and to reverse it the defendant prosecutes this appeal.

The principal argument made in behalf of defendant in this court is that the evidence failed to show a conversion of the organ by the defendant and that the court was in error in giving the above instruction to the jury. It is also insisted that the court erred in refusing to give instructions offered by the defendant, and that the verdict finding the value of the organ to be $700.00 is flagrantly against the evidence.

If the first error complained of be without merit, then the second one complained of would necessarily be so. But, postponing for the present the consideration of these questions, we will first dispose of the last error relied upon. A number of witnesses besides plaintiff, who, according to the testimony, were versed in such

matters, said that plaintiff's organ in the condition it was at the time it was delivered to defendant was reasonably worth $700.00 or $800.00, the plaintiff fixing its value at a still higher sum. Witnesses for defendant, perhaps equal in number to those who testified for plaintiff on this point, gave it as their opinion that the organ at the time it was delivered to defendant was worth from $50.00 to $200.00. This condition of the testimony produced a contradiction of proof upon this point and created an issue essentially for determination by the jury, and under the long established rules governing jury trials we can not under the state of the record disturb the verdict for this reason.

The defendant was a bailee of the organ under its contract to remodel it, by which it agreed, according to the undisputed proof, to repair it so as to convert it into one playing perforated 65-note music. There is absolutely no testimony that defendant agreed to undertake to make the repairs, only, without assurances of success, as it alleged in its answer. It did not perform or commence to perform its contract within the time specified, nor within a reasonable time after it was made, which duty the law would impose upon it in the absence of a specified time. Plaintiff then at any time thereafter had the right to abandon his contract and to seek against defendant whatever relief the law would afford him. Under such conditions the law seems to be well settled that the bailor, if a chattel has been rendered worthless by the bailee, may treat it as a conversion and sue the bailee for its value. 2 Parsons on Contracts, page 137; 6 Corpus Juris, 1165. In the last work referred to the text says:

"Where an article is intrusted to a bailee for alterations or repairs, and by reason of deviation from the bailor's instructions, or negligence, or of unskilfulness, the work is not properly performed, the bailor may sue for the breach of contract to repair, in which case the measure of his damages is the difference in the value of the article in its present condition and what it would have been worth if the work had been properly performed; or, if the article has been converted by the bailee or has been so seriously injured by him as to have practically lost its value to the bailor and has accordingly been abandoned to the bailee, an action may be

brought in trover and plaintiff may recover the value of the property.''

This is not only supported by most respectable authority, but it is the essence of sound legal reasoning, and we do not hesitate to adopt it as the correct legal principle. Here the proof shows that at the expiration of more than four years nothing remained of plaintiff's organ but a lot of disconnected parts, of no value except perhaps as junk, and plaintiff had the right to treat defendant's conduct as a conversion of his organ and to sue for its value. A different state of case might have been presented if the organ had not been rendered worthless through defendant's conduct, but we have no such conditions here.

We therefore conclude that since there was no material contradiction in the testimony relating to the nonperformance of the contract, the court did right in submitting to the jury only the value of the organ.

Clearly the effort to repair or restore the organ after the long delay, and after plaintiff had taken steps to assert his rights in court, could not cure the wrong nor relieve defendant of the consequences. According to the testimony of its president, after the matter was placed in the hands of an attorney, the defendant ''got busy'' to repair the organ, but this awakening to its obligation was too late for it to be benefitted thereby, since the law in a case like this ascribes no saving grace to such tardy repentance.

A thorough consideration of the entire record fails to reveal any prejudicial error committed at the trial, and the judgment is therefore affirmed.